

**Broker/Shipper Services Agreement**

This Broker/Shipper Services Agreement ("Agreement"), is made and entered into as of the day __August 13, 2019__, by and between __Engineered Plastic Components, Inc.__ ("SHIPPER"), with a principal place of business in __Plastic Molding__, and KING OF FREIGHT, LLC ("BROKER"), with a principal place of business in Wichita, Kansas. SHIPPER and BROKER are sometimes individually referred to herein as a "Party" and together as the "Parties."

### RECITALS

WHEREAS BROKER is licensed as a Property Broker by the Federal Motor Carrier Safety Administration ("FMCSA") and, where applicable, by appropriate State agencies, and as a licensed broker, arranges for freight transportation. A copy of BROKER's authority is attached as Appendix A and a copy of BROKER's Surety Bond or trust fund agreement is attached as Appendix B; and

WHEREAS SHIPPER, to satisfy some of its transportation needs, desires to utilize the services of BROKER to arrange for transportation of SHIPPER's freight.

NOW THEREFORE, intending to be legally bound, BROKER and SHIPPER agree as follows:

### AGREEMENT

1. **Term.** The term of this Agreement shall be one (1) year, commencing on the date first mentioned above, and shall automatically renew for successive one year periods; provided, however, that either Party may terminate this Agreement on 15 (fifteen) days written notice to the other Party, with or without cause, or as otherwise provided in this Agreement.

2. **Service.** BROKER agrees to arrange for transportation of SHIPPER's freight pursuant to the terms and conditions of this Agreement and in compliance in all material respects with all federal, state and local laws and regulations relating to the brokerage of the freight covered by this Agreement. BROKER's responsibility under this Agreement shall be limited to arranging for, but not actually performing, transportation of SHIPPER's freight. It is understood that BROKER is retained by SHIPPER to arrange for transports by third party Motor Carriers ("Carrier"), and that BROKER performs the services under this agreement only as a broker and not as a carrier. The Parties may mutually agree, in writing, for BROKER to perform other services from time to time.

EXHIBIT 1.

3. **Volume.**

    A. SHIPPER agrees to tender shipments to BROKER, and BROKER agrees to arrange for the transportation of said shipments, as well as any other shipments offered by SHIPPER. SHIPPER is not restricted from tendering freight to other brokers, or directly to motor carriers. BROKER is not restricted from arranging transportation for other parties.

    B. SHIPPER shall be responsible to BROKER for timely and accurate delivery instructions and description of the cargo, including any special handling or security requirements, for any shipment.

4. **Broker's Duties and Warranties.**

    A. BROKER shall be solely responsible for selection of Carriers for transporting of goods under this agreement. BROKER shall not utilize any Carrier with an "Unsatisfactory" safety rating in the performance of this Agreement. BROKER represents that it shall use only the services of Carriers holding appropriate operating authority issued by the former Interstate Commerce Commission or Surface Transportation Board or the Federal Motor Carrier Safety Administration, as applicable, and who are in compliance with all applicable and material state, federal and local laws, rules or regulations.

    B. BROKER warrants it will require proof of insurance and operating authority from each Carrier.

    C. BROKER shall maintain a surety bond or trust fund agreement as required by the Federal Motor Carrier Safety Administration and furnish SHIPPER with proof upon request. BROKER shall immediately notify SHIPPER if BROKER'S authority is revoked or suspended and BROKER shall not provide any services under this agreement during any period of time that BROKER'S authority is suspended or revoked.

    D. BROKER warrants that it has entered into, or will enter into a written contract of carriage with each Carrier it utilizes in the performance of this Agreement in accordance with BROKER's customary Broker/Carrier Agreement.

5. **Receipts and Bills of Lading**. BROKER agrees to provide SHIPPER with proof of acceptance and delivery of such loads in the form of a signed Bill of Lading or Proof of Delivery, as specified by SHIPPER. SHIPPER's insertion of BROKER's name on the bill of lading shall be for SHIPPER's convenience only and shall not change BROKER's status as a property broker. The terms and conditions of any freight documentation used by BROKER or Carrier selected by BROKER may not supplement, alter, or modify the terms of this Agreement.

6. **Rates and Payments.** BROKER shall invoice and collect freight and broker charges from SHIPPER in accordance with the rates, charges and provisions set forth in any Load Confirmation and Rate Agreement and any written supplements or revisions that are mutually agreed to between the Parties. If rates are negotiated between the Parties and not

otherwise confirmed in writing, such rates shall be considered "written," and shall be binding, upon BROKER's invoice to SHIPPER and SHIPPER's payment to BROKER. SHIPPER shall pay BROKER the rates and charges set forth in the Load Confirmation and other writings pursuant to these terms. BROKER shall be paid within thirty (30) days of SHIPPER's receipt of the invoice, with the signed confirmation of the driver BOL. No offsets may be taken against invoiced charges.

The Rates set forth in the Load Confirmation and Rate Agreement (if applicable) shall not include accessorial services, including but not limited to detention charges, equipment ordered and not used (dry run), re-delivery, and inside pickup/delivery. Such accessorials are subject to the transporting Carrier's standard rates or tariff terms and conditions and shall be billed separately and in addition to the rates reflected in the Load Confirmation and Rate Agreement, unless specified therein, except that in no event shall SHIPPER be required to pay any amounts for such services that exceed reasonable and customary charges for the same or similar services. SHIPPER shall not be charged for detention if the delivery appointment is missed due to Carrier error, disability, fault or negligence, or because of accident or breakdown of Carrier's equipment.

Payment of the freight charges to BROKER shall relieve SHIPPER or other responsible party of any liability to the Carrier for non-payment of its freight charges; and BROKER hereby covenants and agrees to fully and completely indemnify, defend and hold-harmless SHIPPER or other responsible party against such liability.

7. **Claims.**

   A. **Freight Claims.** SHIPPER must file claims for cargo loss or damage with BROKER and Carrier within one hundred eighty (180) days from the date of such loss, shortage or damage, which for purposes of the Agreement shall be the delivery date or, in the event of non-delivery, the scheduled delivery date. SHIPPER must file any civil action against the Carrier in a Court of Law within two (2) years from the date the Carrier or BROKER provides written notice to SHIPPER that the Carrier has disallowed any part of the claim in the notice.

   It is understood and agreed that the BROKER is not a Carrier and that the BROKER shall not be held liable for claims including but not limited to (1) loss, damage or delay in the transportation of SHIPPER's property, or (2) bodily injury or property damage claims asserted by third Parties against Carrier or SHIPPER, unless such claims or damages result in whole or in part from BROKER'S negligence or breach of this agreement.

   B. All Other Claims. The Parties shall notify each other of all known material details within sixty (60) days of receiving notice of any claims other than cargo loss or damage claims, and shall update each other promptly thereafter as more information becomes available. Civil action shall be commenced within two (2) years from the date either Party provides written notice to the other Party of such a claim.

8. **Indemnity.** BROKER shall indemnify, defend and hold harmless SHIPPER and its directors, officers, employees, agents, subsidiaries and other affiliates for, and hold each of them harmless from and against, any and all liabilities, claims, losses or damages arising from or in connection with (i) the breach of any covenant or agreement of BROKER contained in this Agreement, or (ii) any wrongful or negligent act or omission of BROKER.

   SHIPPER shall indemnify, defend and hold harmless BROKER and its directors, officers, employees, agents, subsidiaries and other affiliates for, and hold each of them harmless from and against, any and all liabilities, claims, losses or damages arising from or in connection with (i) the breach of any covenant or agreement of SHIPPER contained in this Agreement, or (ii) any wrongful or negligent act or omission of SHIPPER.

   For purposes hereof, "Losses" shall mean all fees, costs, damages, judgments, penalties and expenses incurred by either Party, including attorneys' fees and expenses, in connection with the investigation, prosecution or defense of any claim, arising from or related to a negligent act or omission for which indemnity is granted herein, or in connection with the enforcement of the obligation to indemnify contained in this Agreement.  In the event of joint liability of the Parties, SHIPPER and BROKER shall apportion all damages between themselves according to the proportion of their relative fault contributed to the damages suffered.

9. **Hazardous Materials.** SHIPPER and BROKER shall comply with all applicable laws and regulations relating to the transportation of hazardous materials as defined in 49 CFR §172.800, §173, and §397 *et seq.* to the extent that any shipments constitute hazardous materials. SHIPPER is obligated to inform BROKER immediately if any such shipments constitute hazardous materials.

10. **Homeland Security.**  As applicable to each, respectively, BROKER and SHIPPER shall comply with state and federal Homeland Security related laws and regulations.

11. **Default.** Both Parties will discuss any perceived deficiency in performance and will promptly endeavor to resolve all disputes in good faith.  However, if either Party materially fails to perform its duties under this Agreement, the Party claiming default may terminate this Agreement on 3 days written notice to the other Party.

12. **Severability/Survivability.** In the event that the operation of any portion of this Agreement results in a violation of any law, or any provision is determined by a court of competent jurisdiction to be invalid or unenforceable, the Parties agree that such portion or provision shall be severable and that the remaining provisions of the Agreement shall continue in full force and effect. The representations and obligations of the Parties shall survive the termination of this Agreement for any reason.

13. **Independent Contractor.** It is understood between BROKER and SHIPPER that BROKER is not an agent for the Carrier or SHIPPER and shall remain at all times an independent

contractor. SHIPPER does not exercise or retain any control or supervision over BROKER, its operations, employees, or contracted Carriers.

14. **Nonwaiver.**  Failure of either Party to insist upon performance of any of the terms, conditions or provisions of this Agreement, or to exercise any right or privilege herein, or the waiver of any breach of any of the terms, conditions or provisions of this Agreement, shall not be construed as thereafter waiving any such terms, conditions, provisions, rights or privileges, but the same shall continue and remain in full force and effect as if no forbearance or waiver had occurred.

15. **Notices.**  Unless the Parties notify each other in writing of a change of address, any and all notices required or permitted to be given under this Agreement shall be in writing (or fax with machine imprint on paper acknowledging successful transmission) and shall be provided in a manner as to create a reasonable belief that the other Party has received the notice.

16. **Force Majuere.**  Neither Party shall be liable to the other for failure to perform any of its obligations under this Agreement during any time in which such performance is prevented by fire, flood, or other natural disaster, war, embargo, riot, civil disobedience, or the intervention of any government authority, or any other cause outside of the reasonable control of the SHIPPER or BROKER, provided that the Party so prevented uses its best efforts to perform under this Agreement and provided further, that such Party provide reasonable notice to the other Party of its inability to perform.

17. **Choice of Law and Venue.**  The Parties agree that this agreement shall be deemed to be entered into in Sedgwick County, Kansas and services will be deemed to have been performed there. All questions concerning the construction, interpretation, validity and enforceability of this Agreement, whether in a court of law or in arbitration, shall be subject to and governed by the laws of the State of Kansas or applicable federal law, irrespective of the fact that one or more of the Parties may be or may become a resident of a different state.  The Parties agree that any and all disputes under this Agreement shall be filed in the appropriate state and federal courts of competent jurisdiction located within the State of Kansas. Jurisdiction and venue shall be proper in the State of Kansas for any and all claims or disputes arising out of any transactions between BROKER and SHIPPER. The Parties hereby submit to the personal jurisdiction of the state and federal courts in Kansas waive any claims or objections that such courts will be improper or inconvenient forums.

18. **Dispute Resolution.**  The Parties agree that this Agreement is being entered into in good faith and that if a dispute arises in its application or interpretation that they shall attempt to resolve said dispute between themselves.  If such efforts fail, the Parties agree to submit such claims or disputes to mediation with an experienced mediator in Sedgwick County, Kansas, with the costs and expenses to be paid by the Party incurring same, except with respect to mediation fees which shall be divided and paid equally, prior to the filing of any

suit by either Party against the other, unless such provision is subsequently waived in writing by both Parties. This mediation requirement shall not apply to claims for indemnity.

19. **Personal Guarantee.** If SHIPPER is a corporation, LLC, partnership, or other artificial entity, the undersigned person hereby personally and unconditionally guarantees the terms of this Agreement. BROKER may enforce this guaranty without first resorting to or exhausting other legal remedies. Guarantor agrees to guarantee SHIPPER's full and complete performance of any and all present and future duties, obligations, or responsibilities made pursuant to this Agreement. This Personal Guarantee shall be construed exclusively in accordance with, and governed by, the laws of the State of Kansas. Any dispute arising hereunder may only be brought within the State Courts of the State of Kansas. This Personal Guarantee embodies the entire promise of Guarantor to BROKER and supersedes all prior agreements and understandings relating to the subject matter here, whether oral or in writing. This Personal Guarantee may not be assigned or transferred without a written document, signed by the Guarantor and BROKER, permitting such assignment or transfer.

20. **Confidential Information.** Notwithstanding any other provisions in this Agreement, the following shall apply:

    A. As used herein, the term "Confidential Information" shall include the terms, conditions, and existence of this Agreement and all information which one Party (the "Receiving Party"), directly or indirectly, acquires from the other Party or the other Party's affiliates or subsidiaries (collectively, the "Disclosing Party"), in connection with this Agreement, and shall include any and all information concerning or pertaining to confidential technical data, know-how, trade secrets, technical and business activities, processes, products and the present and future general business plans and operations of the Disclosing Party. Confidential Information shall not include information that:

    a. is generally available to the public other than as a result of a disclosure in violation of this Agreement;

    b. is obtained from a third party who, to the knowledge of the party receiving such information, is lawfully in possession of such information and is not in violation of any legal, contractual or fiduciary obligation of confidentiality to the other party in disclosing such information;

    c. is already in the possession of the Receiving Party free of any obligation of confidentiality; or

    d. is independently developed by the Receiving Party without reliance upon or reference to the Confidential Information disclosed under this Agreement.

    B. With respect to any such Confidential Information the Parties agree to:

    a. hold such Confidential Information in strict confidence;

  b. not disclose such Confidential Information to any third party; and

  c. disclose such Confidential Information only in connection with the performance or enforcement of the terms and conditions of this Agreement or as required by law and only after reasonable steps have been taken to minimize the extent to which such Confidential Information is disclosed.  The provisions of this Section shall survive expiration or termination of this Agreement.

21. **Entire Agreement.**  This Agreement constitutes the entire agreement intended by and between the Parties and supersedes all prior agreements, representations, warranties, statements, promises, information, arrangements, and understandings, whether oral, written, expressed or implied, with respect to the subject matter hereof. The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms and that no extrinsic evidence may be introduced to reform this Agreement in any judicial or arbitration proceeding involving this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed in their respective names by their fully-authorized representatives as of the dates first above written.

**BROKER: KING OF FREIGHT LLC**

By:_____

Title:_____

Date:_____

**SHIPPER:** Engineered Plastic Components, Inc.

By: _[signature]_____

Title: Corporate Purchasing Manager

Date: Aug. 13, 2019

**GUARANTOR:**

By_____

Title_____

Date_____